UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61738-CIV-ZLOCH

CAROLINA ACQUISITION, LLC,

      Plaintiff,

vs.                                    **O R D E R**

DOUBLE BILLED, LLC, et al.,

      Defendants.
_____/

      THIS MATTER is before the Court upon Defendants' Motions For Summary Judgment (DE Nos. 49 & 50). The Court has carefully reviewed said Motions and the entire court file and is otherwise fully advised in the premises.

      This case involves the purchase of a multi-million-dollar yacht from Defendants by Plaintiff, who now claims that the sale was carried out through fraudulent representations and omissions. Plaintiff now seeks to rescind the purchase on that basis. The legal issues contemplated in the instant motions are not complex, but, unfortunately, the facts to which the Court must apply the law have been needlessly muddled by Plaintiff.

      To facilitate rulings on summary judgment this District has adopted Local Rule 7.5, which sets out a basic procedure to ensure that the material facts upon which summary judgments turn are clearly set forth by each side. The Court previously struck Plaintiff's initial Response (DE 86) because the statement of material facts therein failed to comply with Local Rule 7.5, and ordered it to re-file its Response in conformity with Local Rule

7.5. Despite this, many of Plaintiff's assertions submitted its re-filed Responses In Opposition To Defendants' Motions For Summary Judgment (DE Nos. 107 & 108) still fail to comply with Local Rule 7.5.C. In fairness to Plaintiff, many of them come close to compliance. So much so that the Court is uncomfortable with the prospect of deeming admitted all facts alleged by Defendants in their Statements Of Material Facts (DE Nos. 49 & 51). At the same time, the Responses are not completely faithful to the Local Rule and place an undue burden on the Court's review of the instant Motions. Therefore, the Court, again and for the last time, shall strike Plaintiff's Responses and order it to comply with the Local Rules and this Court's orders.

Local Rule 7.5 dictates the requisite form motions for and responses in opposition to summary judgment in the Southern District of Florida are to take. The relevant portion of that Rule states that papers opposing a summary judgment motion "shall include a memorandum of law, necessary affidavits, and a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." S.D. Fla. L.R. 7.5.B. Quite sensibly, it also directs that statements of material facts submitted in opposition "shall correspond with the order and with the paragraph numbering scheme used by the movant." S.D. Fla. L.R. 7.5.C. Any additional facts that the non-movant contends are material are to be numbered and placed below. *Id.* This Local Rule is crafted "to make review of summary judgment motions less

burdensome on the Court." Local Rule 7.5 Comments (2008 Amendment).

Plaintiff's Concise Counter Statements of Material Facts (DE 107, pp. 2-11; 108, pp. 2-9) fail to conform to the basic and explicit requirements of Local Rule 7.5 in three respects: 1) they fail to correspond numerically with Defendants' factual assertions; 2) they fail to clearly controvert Defendants' factual assertions; and 3) they fail to place additional factual matter at the end of the statement of material facts, rather they are interspersed throughout. As noted above, Plaintiff's submissions vary in their fidelity to the Local Rule. Some completely miss the mark; others fall short, but just barely. Because the later category composes a majority of the facts at issue and Plaintiff has established its good faith in attempting to comply with the Rule, the Court will not yet deem them all admitted.

The first instance of Plaintiff's failure to comply with the Local Rule is in its failure to abide by Defendants' numbering scheme. Rather than controvert Defendants' Statements paragraph-by-paragraph, for some of the Responses, Plaintiff has rolled what should be several individual responses into several dense brambles of factual matter. As an example, the first paragraph of Defendants Double Billed and Richard Talbert's Statement reads:

> 1. In 2004, F & K Marketing and Management provided a loan to Inlet Boat Works of Merryl's Inlet. F & K Marketing and Management (hereinafter "F&K") was approached by Inlet Boat Works owner Ian Davis to invest in the company. [Dep. Hyatt p. 6 L13-25].

DE 51, ¶ 1.  This is a straightforward statement.  Two facts are alleged, each of which is either true or not, and a simple statement affirming or controverting them is all that is needed.  Instead, Plaintiff's Response to those two sentences is:

> Double Billed, LLC and Talbert acquired the boat that is the subject of this lawsuit ("The Boat") for the sole purpose of obtaining financing for a Virgin Islands real estate development.  F&K/Hyatt required them to buy The Boat and then lent them the proceeds to finance the land development.  Ex. A, Talbert 8/19/08 Dep. 81:19-20; see also Ex. B, Medlin Dep. 13:3-14:6; Ex. C, Hyatt Dep. 42:15-44:22.  Talbert did not want The Boat and never intended to use it himself.  He wanted to sell it as soon as possible.  Ex. A, Talbert 8/19/08 Dep. 40:5-12, 81:15-82:5.  The Boat is unsafe and unseaworthy, was not built in accordance with the designer's plans, and has serious structural issues, including flexing and delamination of the core.  Ex. D, Jones Aff. ¶¶ 8-13; Ex. E, Pedrick Aff. ¶¶ 8-11, 14; Ex. F, Smith Aff. ¶¶ 6-8; Ex. G, Knowles Aff. ¶¶ 4-6.  Double Billed and Talbert never disclosed these problems (Ex. H, O'Neill Aff. ¶¶ 3.4(b), 3.8, 7.13), which they should have known about; made representations about safety and seaworthiness knowing they had no basis for their truth or falsity; and were reckless in such conduct.  Resp. #4, 16.  Double Billed also took no steps to require Talbert to disclose his criminal background, and Talbert did not do so.  Ex. I, Talbert 11/7/08 Dep. 67:3-15; Ex. B, Medlin Dep. 6:1-12.  Over two months, Double Billed and Talbert knowingly used deceptive and unfair consumer sales practices, including: (1) advertisements to consumers, like My Boat, LLC (Resp. #16); (2) verbal statements and visual demonstrations, such as providing "core samples" of the hull to demonstrate its soundness and reassure concerns (Resp. #16, 18; AF #55); (3) faxes of forms (Resp. #46); and (4) refusing to stand behind The Boat (Resp. #42).

DE 107, ¶ 1.  Hopefully, somewhere in that prolixity lies the answer to whether "[i]n 2004, F & K Marketing and Management provided a loan to Inlet Boat Works of Merryl's Inlet." But the Court is unsure where, and it is not about to sift through that like the ruins of Pompeii.  Federal Judges are not archaeologists.

4

*DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999). We possess neither the luxury nor the inclination to sift through that mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment. Such arduous excavations are better left to the likes of Giuseppe Fiorelli——google it.

The problematic nature of that factual allegation is further illuminated by Plaintiff's response to the second and third paragraphs of Defendants' Statement:

> 2. When F & K was approached to invest in Inlet Boat Works the company had already produced one hull which had been sold to a private buyer and was in use. At that time Inlet Boat Works had two additional hulls in production which Mr. Hyatt observed to be in progress at the time of F & K's initial investment. [Dep. Hyatt p.7 L1-9; p.9 L 6-25].
>
> 3. F & K discovered that Ian Davis was embezzling the money that they had invested in Inlet Boat Works. Through litigation and a settlement with Davis, F & K forgave the mortgages they held against Inlet Boat Works in exchange for hull #3 which is the vessel that is the subject of this litigation. [Dep. Hyatt p 14-15; Dep. Hyatt p. 26 L 18 - 25, p 27, L 1-5; p 29 L-1-4; Dep. Talbert p. 24 L 1-25, p. 25 L 1-11, p. 27 L 10-25].

DE 51, ¶¶ 2-3. Again, these are very straightforward points and established with citation to the Record. But to these facts Plaintiff responds:

> 2-3.  Incorporate by reference Resp. #1.

DE 107, p. 3.  This is not helpful, and it occurs repeatedly throughout both Responses.[1]  This does not comport with Rule 7.5;

---

[1] DE 107, pp. 2-10, ¶¶ 2-3, 5-8, 10-15, 17, 19-22, 24, 26-27, 30-31, 33-34, 36-39, 41, 43, 47-50, 52-53;  DE 108, pp. 2-9, ¶¶ 9, 12-14, 18, 20-23, 25, 27-46, 48-50, 52.

it does not aid the Court one bit; and it needlessly frustrates the only task that matters: ruling on the Parties' Motions.

Were it not for the other instances where it appears that Plaintiff has controverted facts, albeit unclearly, the Court would deem all facts admitted and proceed to rule on the merits of the instant Motions. And the Court is not shy about doing so. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, ___ F. Supp. 2d ___, 2009 WL 859246 *3-4 (S.D. Fla. Mar. 30, 2009) (Zloch, J.); *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 595 F. Supp. 2d 1374, 1377-79 (S.D. Fla. Jan. 30, 2009) (Zloch, J.).

An example of a factual allegation that may be controverted, but is unclear, is listed below. Defendants' allegation reads:

> 24. Price found no evidence of any structural problems with the subject vessel at the time of his survey. At the time of his survey, the vessel was structurally sound. [Dep. Price p. 100 4-24]. Specifically, Price had sounded the area where delamination was discovered after the vessel was moved from Florida to Rhode Island. During his prepurchase survey this area of the vessel was sound. [Dep. Price p. 131 L 15-24].

DE 51, ¶ 24.  To that Plaintiff responds:

> 23. Price admits that his inspection was incomplete, and that he knows about the flexing problem that he failed to detect during his March 2007 inspection. Ex. M, Price Dep. Price 84:4-21; 264:15-22.  The Boat is unsafe and unseaworthy.  See Responses to #1, 18.
>
> 24. Incorporate by reference Resp. #23.

DE 107, ¶¶ 23-24.  While Plaintiff's statement of fact does not negate Defendants' contention that Price did not find any evidence of structural problems during his survey, it implies that he now knows of such problems and that such problems existed at the time

6

of his inspection. It also may be negating Defendants' allegation that Price had sounded the area of delamination, but the Court cannot be certain. This exchange nearly complies with the requirements of Local Rule 7.5, but it misses the mark by employing lawyer speak and boilerplate assertions when neither is needed.[2]

Plaintiff's submission of additional facts that it contends are material also fails to comply with Local Rule 7.5. Instead of being placed at the end of Plaintiff's Statement of Material Facts, they are mixed in with the rest of the facts at issue when controverting Defendants' Statements. But only the facts necessary to controvert a statement should be placed in Plaintiff's corresponding paragraph; additional facts "shall be placed at the end of the opposing party's statement of material facts." S.D. Fla. L.R. 7.5.C. Those facts are also to be numbered, and the

---

[2] By way of example, the Court will reproduce here an example of what it finds is a factual assertion drafted in compliance with Local Rule 7.5.C in an unrelated case. The movant's assertion:

> "Deputies then approached the vehicle and physically removed both Plaintiffs, who were handcuffed and patted down for officer safety."

The non-movant's assertion:

> "Admitted that [Plaintiffs] were both physically removed from the vehicle, and handcuffed. . . . . *Not* admitted that the officers had reasonable suspicion that either [Plaintiff was] armed or dangerous, thereby justifying a pat-down search of their outer clothing for weapons."

Case No. 07-61895-CIV-Zloch, DE 36, ¶ 4; *id.*, DE 46, ¶ 4. The response in this example admits what is undisputed and controverts the rest--that the plaintiffs there were patted down "for officer safety." This crystalizes the genuine issue for the Court and allows it to dispose of the motion with greater ease.

7

movant, in its reply, follows that numbering scheme. *Id.* Thus, unless a fact, that the non-moving party contends demonstrates a genuine issue to be tried, clearly controverts a fact provided by the opposing party's statement, it should be placed at the end.

Because Plaintiff's Responses fall short of Local Rule 7.5 the Court shall, once again, strike Plaintiff's Responses and order Plaintiff to resubmit its Responses in full conformity with Local Rule 7.5 and this Order. It is only the near compliance with Local Rule 7.5 that has brought Plaintiff this far. As this is neither horseshoes nor hand-grenades, though, it better hit the mark this time. If Plaintiff again fails to clearly controvert Defendants' Statements Of Material Facts, the Court shall deem them all admitted pursuant to Local Rule 7.5.D, to the extent they are supported by evidence in the record. The Court shall then proceed to rule on the instant Motions For Summary Judgment on the merits with the facts thereby established.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Carolina Acquisition, LLC's Responses In Opposition To Defendants' Motions For Summary Judgment (DE Nos. 107 & 108) be and the same are hereby **STRICKEN**;

2. By <u>noon</u> on <u>Wednesday, May 20, 2009</u>, Plaintiff shall re-file its Responses to Defendants' Motions For Summary Judgment (DE 49 & 50) in conformity with Local Rule 7.5 and this Order; and

3. By <u>noon</u> on <u>Wednesday, May 27, 2009</u>, Defendants shall file their Replies.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___8th___ day of May, 2009.

                                  *[signature]*
                                  WILLIAM J. ZLOCH
                                  United States District Judge

Copies furnished:

All Counsel of Record